JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LETICIA JOY ARCINIEGA,<br><br>　　　　Debtor.<br>———————————————<br>LETICIA JOY ARCINIEGA,<br>　　　　Defendant-Appellant,<br>v.<br>JAMES CLARK,<br>　　　　Plaintiff-Appellee. | Case No. 5:23-CV-00301-JLS<br><br>Adv. Case No. 6:11-AP-01735-SY<br><br>BK Case No. 6:11-BK-15412-SY<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY COURT ORDER** |

The present bankruptcy appeal has been twelve years in the making. The Bankruptcy Court judge aptly referred to this case as "appellate purgatory." This case has come to this Court once before on appeal; before that, it was appealed to the Bankruptcy Appellate Panel ("BAP") twice and was twice remanded. Thus, this is the fourth appeal of rulings associated with a single adversary action, *Clark v. Arciniega*, 6:11-AP-01735-SY (C.D. Cal.), filed in the bankruptcy case *In re Leticia Joy Arciniega*, 6:11-bk-15412-SY (C.D. Cal.).[1] As set forth herein, the Court AFFIRMS IN PART and REVERSES IN PART the Bankruptcy Court's Order. The Court affirms the conclusion that, for purposes of attorney fees, there is no prevailing party, but reverses a similar finding as to an award of costs. The Court awards $11,032.02 in costs to Debtor-Appellant Leticia Joy Arciniega.

I.   INTRODUCTION

The relevant factual background is set forth in this Court's Order Vacating and Remanding Bankruptcy Court Judgment, filed in the related case (the third appeal). (*See Clark v. Arciniega*, 5:19-cv-01383-JLS (C.D. Cal.) (Doc. 33 ("Remand Order")).) The lengthy procedural history, through the adjudication of the third appeal, is also set forth in the Remand Order. Those facts and procedural history are well known to the parties, the Bankruptcy Court, and this Court. They are not set forth again here.

But since that time, as required by this Court's Remand Order, the Bankruptcy Court considered whether Debtor-Appellant should be considered a prevailing party for purposes of both an award of attorney fees and an award of costs. For the reasons set forth in the transcript from the hearing held on February 2, 2023, the Bankruptcy Court determined that there was no prevailing party and that, in the absence of a prevailing party, it would award neither attorney fees nor costs. (*See* BK Doc. 897 (Order Denying Motion to Determine that [Debtor] is the Prevailing Party); *see*

---

[1] Herein, the Court cites to docket entries of the main bankruptcy case as "BK Doc." and the adversary action docket as "AP Doc."

*generally* Feb. 2, 2023 Tr. at 17-35 (hereinafter "Feb. 2, 2023 Tr.").)[2] Debtor has appealed that ruling.

## II. LEGAL STANDARDS

### A. Standard of Review

A bankruptcy court's refusal to award attorney's fees, including a determination that there was no "prevailing party" as defined by state law, is reviewed for abuse of discretion. *In re Brosio*, 505 B.R. 903, 909 (B.A.P. 9th Cir. 2014). An abuse of discretion is found where the court "applie[s] the wrong legal standard or its factual findings are illogical, implausible or without support in the record." *Id.* The interpretation of state law by a bankruptcy court is reviewed *de novo*. *Id.* An appellate court may affirm on any ground supported by the record. *Id.*

### B. "Prevailing Party" Determination

In the Remand Order, the Court set forth the legal standard governing the determination of whether, under California law, a party should be considered a "prevailing party" that is entitled to an award of fees for "an action on the contract" under a contractual attorney-fee provision. (Remand Order at 22-25.) The Court also set forth a similar (but not identical) standard for determining whether a party is a "prevailing party" for purposes of an award of costs. (*Id.* at 25.) The Court repeats those standards below.

#### 1. Attorney Fees

Prevailing party status is determined with reference to California Civil Code § 1717, which in relevant part provides:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the

---

[2] These are found on the docket within the Appellant's Excerpt of Record, Doc. 14-3 at 63-64 (Order) 14-3 at 86-120 (Feb. 2, 2023 Transcript).

> contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
>
>     . . .
>
> (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section . . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section.

Cal. Civ. Code § 1717.  Notably, under this section, courts must consider only the success or failure as to claims "on the contract."  *Id.*

"[T]he determination of prevailing party for purposes of contractual attorney fees [must] be made without reference to the success or failure of noncontract claims." *Hsu v. Abbara*, 9 Cal. 4th 863, 873-74 (1995) (discussing an amendment to § 1717 replacing "prevailing party" with "party prevailing **on the contract**" (emphasis added)).  "[P]arties whose litigation success is not fairly disputable" are entitled to "attorney fees as a matter of right," but a "trial court [retains] discretion to find no prevailing party when the results of the litigation are mixed." *Id.* at 876. In *Hsu*, the California Supreme Court held that "in deciding whether there is a 'party prevailing on the contract" pursuant to § 1717, courts must "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.*  This comparison must "be made only upon final resolution of the contract claims and only by a comparison of the extent to which each party has succeeded and failed to succeed in [his or her] contentions." *Id.* (cleaned up).  Moreover, "in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable

4

considerations.'" *Id.* at 877 (emphasis omitted).  Significantly "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of California v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999).

### 2. Costs

The definition of prevailing party for purposes of costs is different than that used for attorney's fees.  *See* Cal. Code of Civ. Proc. § 1032(a)(4) ("'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.").

## III. DISCUSSION

Clark's claim was for non-dischargeability, not breach of contract.  (*See generally* AP 1, Compl.)  Given the forum, this was understandable, for if he were to recover damages on any claim against Debtor, he would also have to establish that those damages could not be discharged in bankruptcy.  In substance, the relevant claims[3] alleged that Debtor breached her settlement agreement with Clark by undertaking a promise (refinance of the Verona property) she did not intend to keep, thereby committing promissory fraud.  As a result of this promissory fraud, Clark claimed that his damages were non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), which makes non-dischargeable "money . . . obtained by false pretenses, a false representation, or actual fraud."

The proceedings indeed established Debtor breached the agreement and committed promissory fraud.  (*See* Remand Order at 3, 13 n.6.)  But Clark failed to

---

[3] Two other claims raise objections to discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).  (AP 1 (Compl.).)  According to the Memorandum Opinion of the BAP, the Bankruptcy Court's ruling in favor of Debtor was not raised on appeal.  (AP Doc. 164, BAP Feb. 3, 2016 Mem. Op. at 8 n.4.)

prove causation in that he failed to prove that he suffered actual damages[4] *due to* Debtor's fraud.  (Remand Order at 13-15.)

---

[4] In addition to the reasons outlined in the Remand Order, another reason for the absence of actual damages in this case harkens back to the first BAP Memorandum Opinion, which concluded, without much analysis, that the parties' settlement agreement had two independent provisions:  one related to the Arrowhead property and one related to the Verona property.  (BAP Feb. 3, 2016 Mem. Op. at 23; *see also* AP 106 at 33-38, May 11, 2009 Agreement of Compromise, Settlement, and Mutual and General Release ("Agreement").)  Specifically, in section II.A. of the Agreement, Clark was to pay Debtor $50,000, and Debtor was to quitclaim her interest in the Arrowhead property.  In section II.B., Debtor was to "take all necessary measures to pay off the existing VA loan," and Clark was to execute all necessary documents to enable Debtor to effectuate the removal of Clark from the loan and would waive "any and all interests" to the Verona property.  In section II.C., Clark was to dismiss the San Bernardino Superior Court case once the Agreement was executed, the quitclaim deed was delivered, and $50,000 was paid to Debtor.

     According to the BAP, this meant that Debtor's corresponding promise for the $50,000 paid to her by Clark was performed when she executed a quitclaim deed and therefore those funds could not be considered as Clark's actual damages.  (*See* BAP Feb. 3, 2016 Mem. Op. at 23 ("Section II.A. of the Settlement Agreement provides that Clark would pay Arciniega $50,000 in exchange for Arciniega transferring her interest in the Arrowhead Property to Clark.  These two transactions occurred as agreed. In a separate provision of the Settlement Agreement—section II.B.—Arciniega agreed to pay off the VA loan and to remove Clark's name from it.").)  The BAP therefore held that damages flowing from Debtor's failure as to the Verona property were limited to the (unenforceable) liquidated damages provision.  (*Id.*)  The BAP relied on the fact that details and exchanges regarding the Arrowhead property and the Verona property were set forth in separate subsections of the Agreement, as expressly confirmed by the BAP on the second appeal:

> We based this reasoning primarily **on the structure of the settlement agreement**.  More specifically, the $50,000 payment was part of the parties' rights and duties set forth in Subpart A, governing the parties' obligations with respect to the Arrowhead property, whereas the VA loan payoff was part of the parties' rights and duties set forth in Subpart B, governing Arciniega's obligations with respect to the Verona property.  The Subpart A obligations were fully performed by both parties, whereas Arciniega did not perform her Subpart B obligations.

(AP 207-1, BAP Dec. 11, 2017 Mem. Op. at 8 n.3 (emphasis added).)  Indeed, the BAP re-emphasized this point in the same order, expressly precluding the Bankruptcy Court on the second remand from reopening the issue of whether Clark's $50,000 could be considered actual damages.  (*Id.* at 27 n.10.)

     As the Court reads these rulings (which, by the time the matter reached this Court, were law of the case), they are inconsistent with the parties' Agreement.  First, the expressly stated purpose of the Agreement was "to effect a final settlement . . . of any and all claims by and between the parties."  (Agreement at 1.)  Although at the time, the parties were embroiled in litigation that involved only the Arrowhead property, the Agreement as whole reflects the intent to resolve not just the dispute over the Arrowhead property, but also to resolve any remaining entanglements regarding their previous joint ownership of Verona property.  (*See generally id.*)  This intent is also borne out by the full release of Section III.3, which sets forth mutual releases of all "known and unknown" claims and includes a waiver of the protection regarding unknown claims that would otherwise arise

Liquidated damages and nominal damages were held to be unavailable to Clark. Specifically, the second BAP Order concluded that the parties' liquidated damages provision in the parties' agreement was unenforceable. (AP 207-1, BAP Dec. 11, 2017 Mem. Op. at 14-22.) And this Court held that the nominal damages awarded by the Bankruptcy Court were unavailable as a matter of law for fraud claims, although they would have been available had Clark's claim been one for breach of contract. (Remand Order at 15-20.) The BAP had already ruled that Clark could not be a prevailing party in the absence of a damages award in his favor. (BAP Dec. 11, 2017 Mem. Op. at 27-28.) Accordingly, the only remaining question was whether Debtor was the prevailing party.

In its Remand Order, this Court outlined two possibilities as to prevailing party status: first, that Debtor could be considered a prevailing party (and be awarded fees and/or costs); or, second, that neither party should be considered to be a prevailing party. (Remand Order at 22-25.) The Court also noted that the determination of prevailing party status for attorney fees differed from that of costs. (*Id.* at 25.)

### A. Attorney Fees

The Bankruptcy Court discussed at length its rationale for finding no prevailing party as to fees.[5] (Feb. 2, 2023 Tr. at 17-31.) Specifically, the Bankruptcy Court first

---

by operation of California law. (Agreement at 2; *see id.* at 7 (expressly waiving protection of California Civil Code § 1542 as to unknown claims).) But most importantly, the BAP's express reliance, quoted above, on the "structure of the settlement agreement" is itself inconsistent with the express Agreement, memorialized in section II.11., which provides that "the headings and subheadings of the different paragraphs of this Agreement are inserted for convenience and reference only, and are not to be considered part of this Agreement or relevant to the interpretation of the meaning, construction or effect of the relating body." (Agreement at 4.)

[5] The Bankruptcy Court made remarks on the record that it believed itself to be constrained by this Court's Remand Order from finding that Debtor was a prevailing party "as a matter of law." (*See* Feb. 2, 2023 Tr. at 18-21.) From the transcript, it appears that the Bankruptcy Court read the Remand Order as necessarily precluding the per se rule suggested by Debtor, that wherever a plaintiff fails to prove an element of his claim, the defendant must be considered a prevailing party. (*Id.* at 18 (("So as a matter of law, [Judge Staton is] telling me, as a matter of law defendant is not the prevailing party, that I have to decide this in the first instance.").) Although the Court intended the mandate to provide discretion to the Bankruptcy Court in making its determination, in retrospect,

7

reviewed the relevant legal standard, quoting *Hsu*, and noted several considerations, which included: a comparison of the relief awarded on the contract claim with the parties' demands on those claims and their litigation objectives; the extent to which each party succeeded or failed "in its contentions"; the requirement to "respect substance over form and be guided by equitable consideration in determining litigation success." (*Id.* at 19.) The Bankruptcy Court contrasted the notion of "equitable considerations" with the "technical consideration" that Clark proved only four of five elements of his non-dischargeability claim. The Bankruptcy Court noted that "equitable considerations" should be disregarded only if one party had "unqualified" success. (*Id.*) The Bankruptcy Court went on to note, quoting *Scott*, that where "neither party achieves a complete victory, the trial court has the discretion to determine . . . that neither party prevail[ed]." (*Id.* at 19-20 (quoting *Scott*, 20 Cal. 4th at 1109).) The Bankruptcy Court thereafter discussed the "equitable considerations," noting that Clark established that Debtor defrauded him, which weighed in favor of a finding of no prevailing party. (*Id.* at 22.)

    On this record, it is clear that the Bankruptcy Court followed the Court's instructions on remand. It applied the correct legal standard, and the underlying factual basis of its conclusions are rational and supported by the record.

    Moreover, although not expressly discussed by the Bankruptcy Court, key to this case is that "the determination of prevailing party for purposes of contractual attorney fees [must] be made without reference to the success or failure of noncontract claims." *Hsu*, 9 Cal. 4th at 873-74. Here, Clark's fraud-based non-dischargeability claim was an "action on the contract" only because it required interpretation of the contract; it was not a contract claim. (BAP Feb. 3, 2016 Mem. Op. at 32-33.) Had Clark's claim proceeded as a breach of contract claim, Clark would have succeeded as

---

the Court agrees that such a per se rule is incompatible with the legal standard regarding an award of attorney fees in the context of this case, where (as discussed below) the only claim asserted is not a breach of contract claim.

to every necessary element; namely, he proved that Debtor breached the contract by her failure to refinance the VA loan on the property, and that would have entitled him to at least nominal damages. It was only because Clark had to prove the additional element of actual damages due to Debtor's fraud that he did not prevail on his non-contract claim of non-dischargeability.

Thus, conceptually reframing the claims actually asserted by focusing on the extent to which the contract was at issue, "respect[ing] substance rather than form," and "be[ing] guided by 'equitable considerations'" as required by *Hsu*, 9 Cal. 4th at 877, it becomes clear that, with reference only to the contract claim, Debtor was entirely unsuccessful. For this reason, when the result is assessed "without reference to the success or failure of the noncontract claims," *id.* at 873-74, Debtor did not "achieve[] a complete victory on all contract claims," *Scott Co.*, 20 Cal. 4th at 1109. Accordingly, the conclusion that there was no prevailing party was within the Bankruptcy Court's discretion.

On this basis, the Court AFFIRMS the Bankruptcy Court's conclusion that, for purposes of the § 1717 inquiry, there is no prevailing party in this action and AFFIRMS the conclusion that no award of attorney fees is warranted.

**B. Costs**

The Bankruptcy Court's rationale as to prevailing party status as to costs is much the same as for attorney fees. (Feb. 2, 2023 Tr. at 32-33.) The Bankruptcy Court excluded Clark from the § 1032(a)(4) category of a plaintiff who recovered "no relief" because he established four of the five elements of fraud, and because the finding that Debtor defrauded him went unchallenged and/or unreversed on appeal. (*Id.*) On this basis, the Bankruptcy Court found that Debtor should not be considered a prevailing party entitled to costs. Because this is a matter of statutory interpretation,

the Court applies *de novo* review. *In re Brosio*, 505 B.R. at 909. The Court's *de novo* review yields a different result than that of the Bankruptcy Court.[6]

"The definition of 'prevailing party' in section 1032 is particular to that statute and does not necessarily apply to attorney fee statutes or other statutes that use the prevailing party concept." *DeSaulles v. Cmty. Hosp. of Monterey Peninsula*, 62 Cal. 4th 1140, 1147 (2016). In contrast to the determination of a "party prevailing on the contract" required by § 1717, the "prevailing party" pursuant to § 1032(a)(4) is a much more straightforward determination. First, it does not focus solely on contract claims "without reference to the success or failure of the noncontract claims." *Hsu*, 9 Cal. 4th at 873-74. Second, it does not incorporate the equitable considerations referred to in *Hsu* for "mixed results." *Cf. id.* at 877.

The relevant statute instead sets forth categories of prevailing parties:

- the party with a net monetary recovery,
- a defendant in whose favor a dismissal is entered,
- a defendant where neither plaintiff nor defendant obtains any relief, and
- a defendant as against those plaintiffs who do not recover any relief against that defendant.

Cal. Code Civ. Pro. § 1032(a)(4) (paragraph structure altered). It is only when there is a party "in situations other than as specified" that the court's inquiry becomes more discretionary, and "the 'prevailing party' [is] determined by the court, [which] in its discretion, may allow [or] apportion costs between the parties on the same or adverse

---

[6] Although the parties argue based on an abuse of discretion standard of review throughout their briefs, the Court's review is *de novo*. California courts of appeal apply *de novo* review to the determination of whether a party falls into any of the categories set forth in § 1032(a)(4). *See, e.g., Charton v. Harkey*, 247 Cal. App. 4th 730, 739 (2016) ("Whether a party falls within one of the four categories authorizing the recovery of costs as a matter of right is a question of law we review *de novo*."). Bankruptcy appeal courts review *de novo* the application of and interpretation of state law by a bankruptcy court. *In re Brosio*, 505 B.R. at 909. And more generally, bankruptcy appeal courts review a bankruptcy court's legal conclusions *de novo*. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 526 (9th Cir. 2001). That said, regardless of which standard of review is proper, the Court's conclusion as to prevailing party as to costs would be the same.

sides pursuant to rules adopted" by the Judicial Council. *Id.* "By statute, a defendant against whom a plaintiff recovers no relief is a 'prevailing party,' [and a] trial court has no discretion to deny prevailing party status to such a defendant. *Huerta v. Kava Holdings, Inc.*, 29 Cal. App. 5th 74, 79 (2018).

Here, neither Clark (plaintiff) nor Debtor (defendant) recovered any "relief." The Bankruptcy Court's conclusion to the contrary looked to the fact that Clark had established four of the five elements of dischargeability due to fraud. But while Clark established a number of his *contentions* regarding Debtor's fraud-based breach of contract, which was important as to fees, he did not obtain any "relief" as a result of establishing those contentions.

The term "relief" in § 1032(a)(4) is used in accordance with the term's usual meaning. This subsection refers to both "net monetary recovery" and "other than monetary relief" in a manner that suggests these two terms, "monetary recovery" and "monetary relief," mean the same thing. *See DeSaulles*, 62 Cal. 4th at 1153 ("In the statute, 'monetary relief' is synonymous with 'net monetary recovery . . . .'"). "Relief" under § 1032(a)(4) is a "broad term" that includes not only an award of monetary damages, but also non-monetary relief, such as declaratory relief, injunctive relief, or other specific relief. *See DeSaulles*, 62 Cal. 4th at 1153 (noting that "'[r]elief,' like 'recovery,' is a broad term that can include money obtained through a settlement"). For example, in *Friends of the Trails v. Blasius*, 78 Cal. App. 4th 810, 838-39 (2000), the court affirmed an award of costs to a party who was awarded declaratory relief establishing a public easement even though the judgment stated that "no relief is granted in favor of plaintiffs against defendant."

In the end, the use of "relief" in § 1032(a)(4), is consistent with the Black's Law Dictionary definition of "relief," which is, "the redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.—Also termed remedy." Black's Law Dictionary (11th ed. 2019). "Remedy,"

in turn, is defined as "[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Id.*

With "relief" defined in this manner, and given the history of this case, Debtor was "a defendant where neither plaintiff nor defendant obtain[ed] any relief" within the meaning of § 1032(a)(4).  Thus, as to costs, the Bankruptcy Court lacked the discretion to deny prevailing party status to Debtor, *Huerta*, 29 Cal. App. 5th at 79, and she is entitled to costs as a matter of right.  Accordingly, the Court REVERSES the Bankruptcy Court's Order on the issue of costs, and AWARDS COSTS to Debtor in the amount of $11,032.02.

## IV. CONCLUSION

As set forth herein, the Court AFFIRMS the Bankruptcy Court's Order as to its denial of an award of attorney fees, but REVERSES the Bankruptcy Court's Order denying costs.  The Court AWARDS costs in the amount of $11,032.02 to Debtor-Appellant Leticia Joy Arciniega.

The Court directs the Clerk to comply with Federal Rule of Bankruptcy Procedure 8024(a) by preparing and filing a judgment.  The Clerk is also directed to comply with subsection (b) of the same Rule by transmitting a copy of this opinion and a copy of the judgment to the United States Trustee and the Bankruptcy Clerk.

**IT IS SO ORDERED.**

DATED:  November 28, 2023

_____
Hon. Josephine L. Staton
United States District Judge

CC:   BANKRUPTCY COURT